## PEROTKE v. CITY OF FORT WORTH.
### No. 4106.

Court of Civil Appeals of Texas.  Texarkana.
Nov. 12, 1931.

Rehearing Denied Nov. 26, 1931.

E. B. Hendricks, of Gilmer, and Wm. Pannill, of Fort Worth, for appellant.

Geo. C. Kemble, Robt. B. Young, James M. Floyd, and R. E. Rouer, all of Fort Worth, for appellee.

SELLERS, J.

Appellant Edward Perotke brought this suit in the district court of Tarrant county against the city of Fort Worth to recover damages for personal injuries alleged to have been received by appellant on August 31, 1929, while riding in an automobile on Twenty-First street in the city of Fort Worth. Plaintiff alleged that the city of Fort Worth undertook to do some repair work on the street in question about two weeks prior to the day of the accident; that said Twenty-First street ran east and west and the excavation was on the south half of the street between Chestnut and Columbus streets. In making said excavation the city left the surface of said street on the south side two feet below the north half of said street at said point, and an embankment or ridge running down the center of street, and also left large holes and depressions on the south side of said street near the west end of said excavation; that along the said embankment or ridge in the said block near the center of said street the city left many holes and depressions and large and small rocks and loose dirt piled thereon, making said street by reason thereof at said moment dangerous to all traffic or vehicles of every description.

And it was further alleged that on said date the plaintiff at about 9 o'clock at night, while riding in and operating an automobile and going in an easterly direction on the right-hand side of said Twenty-First street in said block and operating said automobile at a reasonable rate of speed and in a careful manner and without negligence and notice of the dangerous condition existing in said street, drove his said automobile off that part of said street immediately west of said excavation, and said car thereupon plunged into said excavation, and that on account thereof, caused plaintiff to lose control of said car, which turned over, throwing plaintiff under said car and inflicting on him serious and permanent injuries.

There were a number of specific acts of negligence on the part of defendant alleged by the plaintiff, and likewise a number of acts of contributory negligence by the plaintiff alleged by the defendant.

The issues as made by the pleadings and the evidence were appropriately submitted to the jury by the court. The jury were unable to agree upon all the issues, but did agree upon issues No. 9 and No. 10, upon which the court based its judgment, and which are as follows:

"No. 9: Was the plaintiff operating his automobile at a rate of speed in excess of twenty miles per hour immediately prior to the time of the accident?"  Answer: "Yes."

"No. 10: If you have answered the foregoing question 'yes,' and only in that event, then

answer: Was the act of the plaintiff in driving his automobile in excess of twenty miles per hour, if you have so found, a proximate cause or did it proximately contribute to cause the accident in question?" Answer: "Yes."

Upon the verdict of the jury the court rendered judgment for the defendant, the city of Fort Worth, that the plaintiff take nothing by his cause of action.

The appellant insists that the following proceedings constituted such misconduct on the part of the court as requires a reversal of this case. While the witness R. H. Thompson was testifying in behalf of appellant, the following proceedings were had:

"By Mr. Hendricks: Q. Do you operate a car, Mr. Thompson? A. How is that?

"Q. Do you operate a car? A. Yes, sir.

"Q. Can you tell by observing a car approximately the rate of speed it is going? A. Well, I don't know that I could. I believe I have got an idea though—something about it. * * *

"Q. Now, from your knowledge and experience in the operation of automobiles, Mr. Thompson, in your opinion how fast was that car traveling?

"Mr. Rouer: Just a minute. Wait a minute. I want to ask this witness a question.

"Q. Now, Mr. Thompson, how far would you say that you and Mr. Rice were from that car at the time you saw it? A. At the time we saw it?

"Q. Yes, sir. A. Why, I judge about possibly seven or eight hundred feet, something like that.

"Q. Seven or eight hundred feet? A. Yes, sir. Just after it came over the hill there.

"Q. Could you see it? Well, there is the point where you saw it? A. Yes, sir, when it came over the hill.

"Q. You didn't see the car when it went into the excavated portion of the street, did you? A. Couldn't see it.

"Q. From the point you and Mr. Rice were at that time you couldn't see it, could you? A. No, sir.

"Q. There would be no way in the world for you to know how fast that car was going when it went into that excavated portion, would there? A. No, I don't know that there would.

"Mr. Rouer: We submit in addition to that the witness has already testified that he did not believe that he could state what speed the car was making from observation. We submit for two perfectly good reasons the question is not proper.

"Mr. Hendricks: Q. Before this car got to the excavated part of the street—how close to the excavated part of the street did you see it the last time? A. Well, that would be pretty hard to say. I expect it was possibly 40 or 50 feet, you know.

"Q. Did you observe how fast it was running at that time? A. Well, it appeared to be running say, about—

"The Court: Wait a minute. Don't tell how fast. Just answer the question as to whether or not you observed the speed. Answer that yes or no.

"Mr. Hendricks: Q. Did you observe the speed it was going 40 or 50 feet before it got to the excavated part? A. I was looking at it when it went out of sight.

"The Court: Q. How far did you see this car travel? For what distance did you see this car travel before it got to this rough place? A. Well, really, I don't know, Judge, I guess—

"Q. Did you— A. It was a block, I guess.

"Q. Did you pay any particular attention to it? A. Nothing more than any other car.

"Q. Could you now say how fast that car was going? A. No, sir, I could not.

"The Court: All right, that ends that.

"Mr. Pannill: This is the impression he got of it, and we would like to examine him further on that.

"Q. Could you tell approximately the speed of that car the last time you saw it before it reached the excavation? A. Well, it looked to be—

"The Court: Answer the question yes or no. A. About twenty miles, I judge.

"The Court: Now just answer the question yes or no. A. No, sir, I could not tell.

"The Court: The question was, could you tell. A. No, sir.

"The Court: That question can be answered yes or no.

"Mr. Hendricks: Q. Approximately. That don't mean exactly. A. I don't believe I could.

"Mr. Pannill: I would like to ask him some questions.

"The Court: I will sustain the objection to any further questions asked along that line."

■ We are unable to agree with appellant that the court's action in questioning the witness as shown in the above proceedings constitutes error. As we view it, the trial court has an inherent right to ask a witness a question at any time he desires, so long as in doing so he maintains an impartial attitude towards the litigants in the case, and the questions as propounded conform to the rules of evidence, and certainly there is nothing in the above proceedings to indicate that the court had any interest how the witness answered the questions.

■ Neither do we think the questions as propounded by the court could have had the

effect of leading the witness to answer as to the exact speed of the car, for it will be noted that after the court ceased to interrogate the witness the appellant's counsel was permitted to explain to the witness that the answers sought to be obtained did not mean the exact speed, but the approximate speed, and the witness answered that he could not tell.

■ Appellant assigns misconduct of the jury. It appears that when the jury retired to consider their verdict they were unable to agree upon some of the issues submitted to them, but did agree on issues No. 9 and No. 10. The answers to these issues were at that time written by the foreman of the jury on a separate piece of paper and not on the charge. Some time after the jury had been deliberating, they inquired of the court the meaning of "proximate cause," and were referred orally by the court to his charge for their answer. The jury then returned to their room, and after further deliberation were still unable to agree on all the issues submitted, and reported to the court that they were unable to agree and asked to be discharged; and the court asked if they had agreed on any of the issues. Upon being informed by the foreman that they had, the court then sent the jury back to answer what questions they had agreed upon and to write their answers in the charge. While in the jury room at this time, some of the jury advanced the idea that since they were unable to answer all the questions submitted, the result would be a hung jury, but the issues No. 9 and No. 10 were answered and returned into court as their verdict. On the hearing on the motion for a new trial, several jurors testified that they would not have agreed to the answer to the issues to be returned to the court had they not believed the result of their answers would have resulted in a hung jury.

The very purpose of submitting a case on special issues to the jury is to have the jury to answer certain questions of fact without reference to result such finding will have on the judgment to be rendered thereon by the court. Conlisk v. Bender (Tex. Civ. App.) 245 S. W. 941.

As we analyze the evidence of the jurors on motion for rehearing, it is not that they were induced to agree to a finding that the appellant was operating his car in excess of twenty miles per hour and that such speed was the proximate cause of the injury to appellant, for there was never, so far as the evidence shows, any disagreement by the jurors on these issues, but the effect of their evidence is that had they known the result of their answer to issues No. 9 and No. 10, they would not have agreed to the answer to such issues to be returned into the court.

Since the result of their answers to the issues as submitted was a matter of no concern to the jury, the assignment is overruled.

We are unable to find in the record any oral instructions given by the court to the jury which are deemed improper.

The judgment of the trial court is affirmed.